IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


ERIC FIERRO,

      Petitioner,

vs.                                     CIV 17-0738 JCH/KBM

R.C. SMITH, Warden and
HECTOR H. BALDERAS,
Attorney General for the
State of New Mexico,

      Respondents.

## PROPOSED FINDINGS OF FACT AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus ("Petition") (*Doc. 1*) and Amendment for Writ of Habeas Corpus and Exhibit's Attachments ("Amended Petition") (*Doc. 13*), filed by Eric Fierro ("Petitioner") on July 13, 2017 and November 27, 2017, and fully briefed on December 29, 2017 (*Docs. 23, 27*). Petitioner has also filed other miscellaneous motions and objections. *Docs. 21, 22, 26, 27, 28, 30, 31.* The Honorable Judith C. Herrera referred this case to me to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case. *Doc. 5.* Having reviewed the submissions of the parties and the relevant law, the Court recommends that relief be denied.

## I.    Background Facts and Procedural Posture

This case arises from Petitioner's conviction in the Second Judicial District Court,

Bernalillo County, in the State of New Mexico, of eight counts of criminal sexual penetration in the first degree, sixteen counts of criminal sexual penetration in the second degree, three counts of criminal sexual penetration in the third degree, and two counts of bribery of a witness. *Doc. 23-1* at 1-9.[1] Those counts stem from Petitioner's on-going sexual abuse of his stepdaughter in Bernalillo County, from the time she was six years old until she was sixteen years old. *See Doc. 23-1* at 1-6; *Doc. 24-6* at 37. Petitioner was also prosecuted and found guilty in the Thirteenth Judicial District Court, County of Sandoval, State of New Mexico of one count of criminal sexual penetration. *State v. Fierro*, Findings, Conclusion, and Order of the Court, D-1329-CR-2008-00611 (N.M. Dec. 1, 2010). That case stemmed from his further abuse of his stepdaughter in Sandoval County and specifically related to a child he fathered with his then- fourteen-year-old stepdaughter. *Id.*

In the Bernalillo County case, Petitioner was indicted on July 8, 2004 (*Doc. 23-7* at 7) and arraigned on July 19, 2004 (*Doc. 23-7* at 7). His first trial did not begin until August 18, 2008, and the court declared a mistrial. *Doc. 23-7* at 34. Re-trial began on January 12, 2009 (*Doc. 23-7* at 35), and the jury found Petitioner guilty of 29 counts, as listed above (*Doc. 23-7* at 35-56). The state court sentenced Petitioner on March 25, 2009 to 198 years of imprisonment. *Doc. 23-1* at 1-9.

Following his sentence, at the New Mexico Court of Appeals, Fierro asserted eight issues in his docketing statement (*Doc. 23-3* at 25-31), but briefed only two issues: alleged speedy trial violations and ineffective assistance of counsel (*Doc. 23-3* at 61-73). The Court of Appeals addressed both of those issues, and on February 20, 2012,

---

[1] The Court cites the CM/ECF document numbers and pages, rather than internal page numbers found in the exhibits.

affirmed Petitioner's conviction. *Doc. 23-4* at 1-32. The New Mexico Supreme Court denied Fierro's Petition for Writ of Certiorari. *Doc. 23-4* at 81.

On April 17, 2013, Fierro sought collateral relief by filing a Petition for Writ of Habeas Corpus with the Second Judicial District Court in Bernalillo County. *Doc. 23-5* at 1-36. The district court denied his petition (*Doc. 23-5* at 93-94), and once again, the New Mexico Supreme Court denied a Petition for Writ of Certiorari (*Doc. 23-7* at 6). Fierro initiated the instant collateral attack by filing a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus in federal court on July 13, 2017 (*Doc. 1*) and an amended petition on November 27, 2017 (*Doc. 13*). Petitioner asserts seven grounds for relief: (1) denial of right to a speedy trial; (2) denial of right to self-representation; (3) actual innocence; (4) *Brady* violation; (5) violation of double-jeopardy; (6) ineffective assistance of counsel; and (7) witness intimidation.

## II. Legal Standard

Section 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), gives federal courts the statutory authority under to issue habeas corpus relief for persons in state custody. *See Harrington v. Richter*, 562 U.S. 86, 97-98 (2011). AEDPA "circumscribes our review of federal habeas claims that were adjudicated on the merits in state-court proceedings," subject to only two exceptions. *Hooks v. Workman*, 689 F.3d 1148, 1163 (10th Cir. 2012). A federal court may grant relief from a state court decision only where a petitioner demonstrates that the trial court's resolution of his claims was "'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or 'was based on an unreasonable determination of the facts in light

of the evidence presented in the State court proceeding.'" *Id.* (quoting 28 U.S.C. § 2254(d)(1), (2)). In analyzing the state court's decision, this Court may only review the record that was before the state court and all factual findings are presumed correct unless rebutted by "clear and convincing evidence." *Id.* (quoting 28 U.S.C. § 2254(e)).

Under Section 2254(d)(1), the threshold question asks whether the applicant is seeking to invoke a rule of law that was clearly established by the Supreme Court at the time the conviction became final. *Byrd v. Workman*, 645 F.3d 1159, 1165 (10th Cir. 2011) (citation omitted); *see also Williams v. Taylor*, 529 U.S. 362, 390 (2000). If the law was clearly established, then the court determines whether the state court decision was "contrary to or involved an unreasonable application of that clearly established law." *Byrd*, 645 F.3d at 1165 (quoting *Turrentine v. Mullin*, 390 F.3d 1181, 1189 (10th Cir. 2004) (internal quotations omitted)).

First, a state-court decision is "contrary to" clearly established law "if the state court applies a rule different from the governing law set forth" by the Supreme Court or "if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Hooks*, 689 F.3d at 1163 (quoting *Bell v. Cone*, 535 U.S. 685, 694 (2002)). The state court is not required to cite to, or even be aware of, Supreme Court decisions, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).

Second, "[a] state-court decision is an 'unreasonable application' of clearly established federal law when the state court 'identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of petitioner's case.'" *Hooks*, 689 F.3d at 1163 (quoting *Wiggins v. Smith*, 539

4

U.S. 510, 520 (2003)). AEDPA precludes issuance of a writ simply because the federal court concludes in its independent judgment that the state court applied the federal law erroneously or incorrectly. *Byrd*, 645 F.3d at 1166. Instead, the application must also be "objectively unreasonable." *Id.* As long as "fairminded jurists could disagree" as to the correctness of the state court's decision, *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004), this "'highly deferential standard for evaluating state-court rulings[ ]' . . . demands that state-court decisions be given the benefit of the doubt." *Hooks*, 689 F.3d at 1163 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).

Finally, even if a federal habeas court finds that the state court decision was contrary to or an unreasonable application of clearly established federal law, habeas relief may not issue unless the violation is of a sort that warrants such relief. *See e.g., Williams*, 529 U.S. at 375 ("It is, of course, well settled that the fact that constitutional error occurred in the proceedings that led to a state-court conviction may not alone be sufficient reason for concluding that a prisoner is entitled to the remedy of habeas."); *Wilson v. Sirmons,* 536 F.3d 1064, 1073 (10th Cir. 2008) ("If we find that the state court erred, we still must determine whether the error is a structural defect 'in the constitution of the trial mechanism, which def[ies] analysis by "harmless-error" standards.'") (quoting *Arizona v. Fulminante,* 499 U.S. 279, 309 (1991)), *rehearing en banc granted on separate issue,* 549 F.3d 1267 (10th Cir. 2008).

### III.    Exhaustion

Under 28 U.S.C. § 2254(b)(1)(A), a petition for writ of habeas corpus cannot be granted "unless it appears that the applicant has exhausted the remedies available in the courts of the State." Exhaustion requires that a claim be pursued "through one

complete round of the State's established appellate review process, giving the state courts a full and fair opportunity to correct alleged constitutional errors." *Selsor v. Workman*, 644 F.3d 984, 1026 (10th Cir. 2011) (citation and quotations omitted). Said another way, "a state prisoner seeking federal habeas relief generally must have first submitted each of his claims to the State's highest court." *Jernigan v. Jaramillo*, 436 F. App'x 852, 855 (10th Cir. 2011).

If a petitioner does not exhaust all state court remedies, the federal court can still deny his or her petition on the merits. 28 U.S.C. § 2254(b)(2). "Exhaustion is, therefore, based on principles of comity; exhaustion is not jurisdictional." *Harris v. Champion*, 15 F.3d 1538, 1554 (10th Cir. 1994). If a petition contains both exhausted and unexhausted claims, the court can

> (1) dismiss the mixed petition in its entirety; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit.

*Fairchild v. Workman*, 579 F.3d 1134, 1156 (10th Cir. 2009) (citations omitted). Under option four, "where the district court is convinced the unexhausted claim is without merit, or that the issue is easily resolvable against the [petitioner], the court may reach the merits of the claim rather than dismiss the petition." *Rudolph v. Galetka*, 208 F.3d 227, at *1 (10th Cir. 2000) (table decision).

Here, Petitioner asserts seven grounds for relief, and Respondents affirm that Petitioner exhausted all but two of those claims. *Doc. 23* at 6. Those two claims, both sub-claims of ineffective assistance of counsel, allege a conflict of interest with the Public Defender's Office and maintain that Petitioner's attorney did not put on any of the

witnesses that Fierro thought would be helpful to his defense. *See Doc. 23* at 6.

Respondents ask that the court proceed under option four, dismissing the unexhausted

claims on the merits, along with Petitioner's exhausted claims. *Doc. 23* at 6. As

discussed below, the Court finds that the unexhausted claims are easily resolvable

against Petitioner, and recommends denying them, in spite of Petitioner's lack of

complete exhaustion.

## IV.     State Decision on the Merits

The deferential standards in Section 2254(d) apply to claims "adjudicated on the

merits in State court proceedings . . . ." 28 U.S.C. § 2254(d); *see also Harrington,* 562

U.S. at 98. However, Section 2254 does not require that a state court provide a

statement of reasons in order to receive deference. "The statute refers only to a

'decision,' which resulted from an 'adjudication.'" *Harrington*, 562 U.S. at 98. "When a

federal claim has been presented to a state court and the state court has denied relief, it

may be presumed that the state court adjudicated the claim on the merits in the

absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

"The presumption may be overcome when there is reason to think some other

explanation for the state court's decision is more likely." *Id.* at 99-100. When a claim is

adjudicated on the merits by the state court, but the court's "decision is unaccompanied

by an explanation, the habeas petitioner's burden still must be met by showing there

was no reasonable basis for the state court to deny relief." *Id.* at 98. For federal habeas

claims not adjudicated on the merits in the state courts, the court must review the claim

*de novo* and the deferential standards of Section 2254(d) do not apply. *Gipson v.*

*Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

While the state courts clearly decided some of Petitioner's claims on the merits, whether they decided all the claims on the merits requires some analysis. The New Mexico Court of Appeals addressed Petitioner's claims of speedy trial and ineffective assistance of counsel on direct appeal and issued an opinion of its reasoning, denying both grounds for relief on the merits. *Doc. 23-4* at 1- 32. The New Mexico District Court addressed Petitioner's remaining, exhausted grounds for relief on collateral attack. *Doc. 23-5* at 93-94. Of those grounds, the district court clearly addressed self-representation on the merits, issuing a written order with its reasoning and denying the claim. *Doc. 23-5* at 93-94.

The district court also summarily denied Petitioner's remaining, exhausted grounds for relief, actual innocence, double jeopardy, *Brady* violation, witness intimidation, and ineffective assistance of counsel. Its only explanation for denial was that "[t]he State's response to Petitioners Claims . . . to be well taken, without need for comment." *Doc. 23-5* at 94. In the State's response, it noted that Petitioner failed to raise most of these claims on direct appeal and they should therefore not be considered on collateral attack. *Doc. 23-5* at 84-88. However, the State also provided an argument as to why the court should deny each claim on the merits. *Doc. 23-5* at 84-90. The state district court made no indication that it only denied these claims on procedural grounds when the State presented both procedural and merits arguments. Accordingly, it is presumed that the state district court denied these claims on the merits. *See Harrington*, 562 U.S. at 99. This Court, therefore, concludes that the state decisions are entitled to the deferential standards under Section 2254(d).

## V. Discussion

Each of Petitioner's seven grounds for relief is discussed below.

### a. Speedy Trial

Petitioner first asserts that the trial court violated his right to a speedy trial because he was indicted in 2004 but did not proceed to his first trial until 2009. *Doc. 1* at 5; *Doc. 13* at 1-2. He points to an Order from the New Mexico Supreme Court requiring that the state district court not extend Petitioner's trial past June 23, 2008. *Doc. 23-2* at 38. The trial, in fact, was extended until August 18, 2008 (*Doc. 23-7* at 34), and Petitioner asserts this is both a violation of the Supreme Court's Order and his right to a speedy trial (*Doc. 13* at 1-2).

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const. amend. XI. The Supreme Court has identified four factors for courts to consider when determining if a defendant's right to a speedy trial has been violated: "length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). The first factor, length of delay, serves as the triggering event for a speedy trial analysis. "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.* at 531. "Delays approaching one year generally satisfy the requirement of presumptive prejudice." *United States v. Batie*, 433 F.3d 1287, 1290 (10th Cir. 2006) (citation omitted).

On direct appeal, the New Mexico Court of Appeals considered Petitioner's argument, balanced the *Barker* factors, and concluded that the trial court had not

violated Petitioner's right to a speedy trial. *Doc. 23-4* at 29. First, it found that the length of delay – fifty-five months – weighed heavily in Petitioner's favor. *Doc. 23-4* at 15. Citing a New Mexico case, the court determined that the length of delay was presumptively prejudicial because the case involved only intermediate difficulty and the delay was over fifteen months. *Doc. 23-4* at 15.

Next, the court addressed the reasons for delay and considered different justifications at different times in the case. *Doc. 23-4* at 16-24; *see also Barker*, 407 U.S. at 531 ("[D]ifferent weights should be assigned to different reasons."). It concluded as follows:

● the State was responsible for the initial ten to eleven month delay while it waited on DNA test results, a justified delay which weighed minimally against the State (*Doc. 23-4* at 16-17);

● the delay from April 2005 until March 2006 "weigh[ed] neutrally" because the parties were conducting discovery and obtaining a possible evaluation (*Doc. 23-4* at 17);

● the delay from March 2006 to August 2008 weighed against Fierro because while the State was ready for trial, the court granted his multiple requests for change in counsel which necessitated continuances (*Doc. 23-4* at 17-22) (noting that "trial was set six times before August 2008, only to be vacated so that Defendant could obtain new counsel or his newly appointed counsel could prepare for trial."); and

● the time between the first trial and re-trial "weigh[ed] neutrally" because of defense counsel's inability to serve subpoenas on witnesses and scheduling conflicts (*Doc. 23-4* at 23).

Thus, the court found the reasons for delay weighed against Petitioner. *Doc. 23-4* at 23.

The Court of Appeals further found that the third factor, assertion of the right, weighed slightly in Petitioner's favor. It reasoned that although Petitioner asserted his right to a speedy trial many times (both through counsel and in *pro se* filings), he also sought continuances to repeatedly get new counsel and for his new counsel to prepare for trial. *Doc. 23-4* at 25-26. In doing so, the court considered the assertion of the right to a speedy trial "in light of [Petitioner's] other conduct." *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986) (finding that the defendant "filled the [ ] docket with repetitive and unsuccessful motions" at the same time as asserting speedy trial claims).

Finally, the Court of Appeals considered the prejudice to Petitioner. *Doc. 23-4* at 26-29. Under *Barker*, prejudice should be assessed in light of a defendant's interest to a speedy trial, which include the defendant's interest "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. Looking at the first two interests – oppressive pretrial incarceration and anxiety – the Court of Appeals found that although Fierro was housed in segregation, such housing was for his own safety. *Doc. 23-4* at 27-28. Further, it found that the trial court set a high bail, which Fierro could not pay, because he had allegedly threatened the victim and her family. *Doc. 23-4* at 28. Accordingly, the court found no undue prejudice based on pretrial incarceration and anxiety. D*oc. 23-4* at 27-28. As to the third interest, Fierro argued prejudice because one of his witnesses died before trial began. *Doc. 23-4* at 28. The Supreme Court has held that "[i]f witnesses die or disappear during a delay, the prejudice is obvious." *Barker*, 407 U.S. at 532. However, the Court of Appeals did not find prejudice in Petitioner's case, because Fierro "failed to demonstrate that [the

deceased witness's] testimony would have assisted him." *Doc. 23-4* at 29. Accordingly, the Court of Appeals declined to find that the delay caused Petitioner undue prejudice.

This thorough analysis is neither contrary to nor an unreasonable application of clearly established federal law. In fact, the Court of Appeals directly applied federal law and balanced the *Barker* factors to determine that while the length of delay was presumptively prejudicial, the other factors weighed against a speedy trial violation. Additionally, Petitioner did not rebut the court's determination of the facts by clear and convincing evidence, and they are thus presumed correct. *See* 28 U.S.C. § 2254(e)(1). Accordingly, the Court recommends denying Petitioner's claim for relief based on a speedy trial violation.

### b. Self-representation

Petitioner next contends that the trial court violated his right to self-representation by not affording him a *Faretta* hearing and denying his request to proceed *pro se*. *Doc. 1* at 7; *Doc. 13* at 4-5. Clearly established federal law holds that "[a]lthough not stated in the [Sixth] Amendment in so many words, the right to self-representation – to make one's own defense personally – is thus necessarily implied by the structure of the Amendment." *Faretta v. California*, 422 U.S. 806, 819 (1975).

While a defendant "must be free to personally decide whether in his particular case counsel is to his advantage," that decision must be made voluntarily, knowingly, and intelligently. *Id.* at 834, 835. "A defendant's waiver is involuntary if he is forced to choose between incompetent counsel or appearing *pro se*." *United States v. Williamson*, 859 F.3d 843, 862 (10th Cir. 2017) (citation omitted). An intelligent waiver of occurs when the defendant "knows what he is doing and his choice is made with eyes

open." *Iowa v. Tovar*, 541 U.S. 77, 88 (2004) (citation omitted). "Although a defendant need not himself have the skill and experience of a lawyer in order to competently and intelligently choose self-representation, he should be made aware of the dangers and disadvantages of self-representation." *Faretta*, 422 U.S. at 835. Generally, the court will hold what is known as a *Faretta* hearing: "a thorough and comprehensive formal inquiry of the defendant on the record to demonstrate that the defendant is aware of the nature of the charges, the range of allowable punishments and possible defenses, and is fully informed of the risks of proceeding *pro se*." *Williamson*, 859 F.3d at 862.

Petitioner presented this self-representation argument on collateral attack to the Second Judicial District Court. Although the trial court did not hold a formally designated *Faretta* hearing, the state habeas court determined that "none was required" because the trial court questioned Petitioner in open court about his desire to proceed *pro se*, and on the record, Petitioner opted to continue with his "experienced, competent, prepared counsel, his eighth, who was prepared to proceed." *Doc. 23-5* at 93. It further found that the trial court had appointed Petitioner new counsel multiple times, which he always accepted. *Doc. 23-5* at 93. The state habeas court, therefore, denied Petitioner's request for relief. *Doc. 23-5* at 93.

Moreover, the record reflects that the trial court *thoroughly* questioned Petitioner to determine if his desire to proceed *pro se* was indeed voluntary, knowing, and intelligent as *Faretta* requires. *Doc. 24-1* at 11-37. Fierro's answers show that even if his decision to proceed *pro se* was voluntary, that decision was neither knowing nor intelligent; instead, Fierro's answers reveal that he failed to fully understand what self-representation entailed in such a serious and complex case. *See Tovar*, 541 U.S. at 88.

Again, the state habeas court's decision to deny Petitioner relief on this ground is not contrary to or an objectively unreasonable application for clearly established federal law.

Petitioner also asserts that "because [he] was not given a *Faretta* hearing he was at that time forced to except [sic] the attorney appointed to him." *Doc. 13* at 5. However, the state habeas court noted that the trial court discussed the benefits of counsel with Petitioner and explained that it would not continue the trial to a later date. And, after giving Fierro time to confer with his attorney, Petitioner agreed to proceed to trial with his current counsel. *Doc. 23-5* at 93. These facts are presumed correct because Petitioner did not rebut them by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Thus, the Court recommends rejection of Petitioner's claim for relief on the ground of denial of self-representation.

### c. Actual Innocence

Petitioner asserts that the victim's testimony in the Sandoval County case proves he is actually innocent in this case. *Doc. 1* at 8; *Doc. 13* at 5-6. In the Bernalillo County proceedings, Fierro was re-tried and found guilty on January 12, 2009 of 29 counts stemming from his on-going decade long sexual abuse of his stepdaughter beginning when she was just six years old. *Doc. 23-7* at 35; *Doc. 23-1* at 1-6; *Doc. 24-6* at 37.

On November 29, 2010, a similar case went forward in the Sandoval County state court. *See State v. Fierro*, Findings, Conclusion, and Order of the Court, D-1329-CR-2008-00611 (N.M. Dec. 1, 2010). That case involved Petitioner's abuse and impregnation of his stepdaughter in Sandoval County when she was fourteen years old. *Id.* During the Sandoval County trial, Petitioner's attorney asked the victim "when you had sex with [Petitioner], as you say, and you got pregnant, were you a virgin at the

time?" *Doc. 23-5* at 85. She responded "yes." *Doc. 23-5* at 85. Petitioner interprets this testimony, received after the Bernalillo County convictions, as proof of his innocence on the Bernalillo County charges and that his on-going sexual abuse of the victim "could not have taken place." *Doc. 1* at 8.

Yet "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). Rather, a claim of actual innocence "is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Id.* at 404. Said another way, newly discovered "evidence must bear upon the constitutionality of the applicant's detention; the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus." *Id.* at 400 (citation omitted).

Here, Petitioner did not present this issue on direct appeal to the New Mexico Court of Appeals, but he did present it to the state district court on collateral attack. The New Mexico District Court summarily denied Petitioner's request for relief, finding the State's argument that this testimony does not prove actual innocence to be well-taken. *See Doc. 23-5* at 94; *Doc. 23-5* at 84-87. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98. After due consideration, this Court concludes that Petitioner fails to meet the required burden.

Fierro is not arguing a constitutional claim in connection with actual innocence. For example, he does not argue that the victim's testimony in the later Sandoval County trial proves some other constitutional violation in the Bernalillo County trial, such as sufficiency of the evidence. Instead, he is arguing actual innocence as a stand-alone claim, which is inappropriate for federal habeas review. *See Herrera*, 506 U.S. at 400 ("[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact."). Accordingly, the state court's denial of this claim is neither contrary to nor an objectively unreasonable application of clearly established federal law, and relief on this ground should be denied.

### d. Alleged *Brady* Violation

Petitioner next argues that the State withheld favorable, impeaching evidence, in violation of *Brady v. Maryland. Doc. 1* at 10. Although he does not provide any more information in this federal Petition, Fierro's state court petition referenced Detective Foster's interview of the victim in the Sandoval County case. *Doc. 23-5* at 27. There Fierro claimed that "despite the wholly incredible and impeachable realities of detective Foster's report, [Assistant District Attorney] Trabaudo failed to disclose and turn over this report to Petitioner or his attorney." *Doc. 23-5* at 27. Under *Brady v. Maryland* "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963).

Reviewing this claim for the first time on collateral attack, the New Mexico District Court summarily denied it. *Doc. 23-5* at 94. The State's response refuted Petitioner's assertion, explaining "Detective Carrie Foster did not testify in this case,

never spoke with the Prosecution in this case, and the State never received any report from her in this case." *Doc. 23-5* at 87-88. These facts, which the district court found to be well-taken, are presumed correct. *See* 28 U.S.C. § 2254(e). Petitioner did not present any new arguments or evidence to rebut that presumption and show an actual *Brady* violation. Once again, the state court's denial of relief on this ground is not contrary to or an objectively unreasonable application of clearly established federal law.

### e. Double-jeopardy

Petitioner asserts without further elaboration that the State violated his right to be free from double jeopardy when it re-tried him after the "DA lead [sic] witness to cause mistrial." *Doc. 1* at 10. Filings in the state district court reveal that the trial court issued an Order in Limine prohibiting testimony touching on conduct that happened outside Bernalillo County. *Doc. 23* ¶ 4; *Doc. 23-2* at 93. During her testimony in the first trial, however, the victim mentioned her child, who was conceived in Sandoval County, and a sexual encounter at Isleta Lakes, located outside of Bernalillo County; the trial court therefore declared a mistrial. *Doc. 23* at 2; *Doc. 23-2* at 93-94. In state court filings, Petitioner argued that by asking the victim open-ended questions, the prosecutor willfully elicited answers in violation of the Order in Limine. *Doc. 23-2* at 96-98.

"The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from repeated prosecutions for the same offense." *Oregon v. Kennedy*, 456 U.S. 667, 671 (1982). The Double Jeopardy Clause, however, does not guarantee that a defendant will have only one trial. *Id.* at 672-73. More than one trial may be permissible when it is the defendant that moves for a mistrial. *Id.* But "even where the defendant moves for a mistrial, there is a narrow exception to the rule that the Double

Jeopardy Clause is no bar to retrial" – when the prosecutor acts with intent to cause the mistrial. *Id.* at 673. "Only where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." *Id.* at 676.

On collateral attack, the state district court summarily denied Petitioner relief on this ground, *Doc. 23-5* at 94, and that denial is not contrary to or an objectively unreasonable application of clearly established federal law. The state court made no finding, and Petitioner presents no further evidence in his Petition to show that the prosecutor intended to force him to move for a mistrial. *See Kennedy*, 456 U.S. at 675. Even if the State asked open-ended questions to the victim, without more to show that the prosecutor goaded Petitioner into moving for a mistrial, this Court cannot conclude that the trial court violated Petitioner's right to be free from double jeopardy. The Court therefore recommends that relief be denied on this ground.

### f. Ineffective Assistance of Counsel

Petitioner maintains that both his trial counsel and appeal counsel provided ineffective representation in various ways. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court devised a two-prong inquiry to determine whether a lawyer's poor performance deprived an accused of his Sixth Amendment right to assistance of counsel. *Id.* at 686-87. In order to establish an ineffective assistance claim, a movant must demonstrate: (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced [his] defense." *Id.* at 687.

To establish deficient performance, a movant must show that his attorney made "errors so serious that counsel was not functioning as the counsel guaranteed to the defendant by the Sixth Amendment," *Williams*, 529 U.S. at 390, and that his legal "representation fell below an objective standard of reasonableness," *Strickland*, 466 U.S. at 688. Review of an attorney's performance "must be highly deferential," and the court must "evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

To establish prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*. The prejudice component focuses on whether counsel's allegedly deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Williams*, 529 U.S. at 393. Courts may, if they prefer, analyze the prejudice prong first and exclusively. *Strickland*, 466 U.S. at 697.

Petitioner raised the issue of ineffective assistance of counsel to both the New Mexico Court of Appeals on direct appeal and the state district court on collateral attack. However, each time he presented this claim, he made different arguments. To the New Mexico Court of Appeals, Petitioner argued his trial attorneys provided ineffective representation by failing to move his case along. *Doc. 23-3* at 71-73. The Court of Appeals rejected this argument, finding that his attorneys' performances were not deficient and finding that Petitioner failed to make any showing of prejudice. *Doc. 23-4* at 30-31. Then, on collateral attack, Petitioner argued that his trial counsel was

ineffective by seeking a continuance and failing: to question a witness; to compel testimony from his brother, Adam Fierro; to object to testimony by his ex-wife, Cora Fierro; and to let him testify in his own defense. *Doc. 23-5* at 31-32. He also argued his appeal counsel was ineffective and did not raise all issues for appeal. *Doc. 23-5* at 33-35. The state habeas court rejected these arguments and denied the petition. *Doc. 23-5* at 94.

Petitioner now asserts that his trial counsel provided ineffective representation by failing to put on a witness, not objecting to hearsay, and failing to let him testify. He also asserts a conflict of interest with the Public Defender's Office and faults his appellate counsel for failing to raise all issues for appeal. *Doc. 1* at 10; *Doc. 13* at 2-4.

### 1. Trial Counsel

Petitioner first asserts that his trial counsel was ineffective because he "did not put any of my witnesses [on the stand]." *Doc. 1* at 10. Although this claim is unexhausted, the Court finds on *de novo* review that this issue is easily resolvable against Petitioner and recommends denial on the merits. *See Rudolph*, 208 F.3d 227, at *1. Specifically, Petitioner provides no more than this conclusory statement without any identification of witnesses he believes his attorney should have subpoenaed. Yet even assuming that his trial attorney's performance fell below an objective standard of reasonableness, Fierro makes no showing of prejudice. The Court simply cannot conclude that there is a reasonable probability that the results of the trial would have been different if these mystery witnesses had testified.

Petitioner next asserts that his trial attorney did not "object to state witness hearsay." *Doc. 1* at 10. It is unclear if he exhausted this claim. In his state habeas

petition, Fierro argued that his trial attorney failed "to object to testimony of Cora Fierro [which] allowed non-relevant, prejudicial and invented facts to be heard and considered by the jurors." *Doc. 23-5* at 33. In this federal Petition, he does not indicate if he is referencing Cora's testimony or that of another witness.

Yet even if he did not exhaust this claim, the Court finds that this issue easily resolvable against Petitioner and recommends denial on the merits. *See Rudolph*, 208 F.3d 227, at *1. Once again, Petitioner provides no more than a conclusory statement to unspecified hearsay and fails to demonstrate that the outcome of his trial would have been different had his attorney objected to it.

Finally, Petitioner alleges that his trial counsel was ineffective by refusing to let him testify in his own defense. *Doc. 1* at 10. Petitioner presented this same argument on collateral attack to the state district court (*Doc. 23-5* at 32), and the court summarily denied it (*Doc. 23-5* at 94). It is well established that "the accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to . . . testify on his or her own behalf . . . ." *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

However, even if Petitioner's trial counsel did prevent him from testifying such that counsel's performance was deficient, Petitioner fails to meet the second *Strickland* prong requiring a showing of prejudice. *United States v. Stine*, 719 F. App'x 834, 837-38 (10th Cir. 2018) (unpublished) ("This claim fails on the prejudice prong because the failure to call Defendant as a witness does not come close to undermining confidence in the outcome of the trial.") (citing *Cannon v. Trammell*, 796 F.3d 1256, 1275 (10th Cir. 2015)). Because Fierro makes no showing of how his testimony would have changed

the outcome of the trial, the state's denial of relief on this ground in not contrary to or an objectively unreasonable application of clearly established federal law.

### 2. Conflict of Interest with Public Defender's Office

Petitioner's claim of an alleged conflict of interest with the Public Defender's Office is unexhausted. Nevertheless, after *de novo* review, the Court recommends denial on the merits because it, too, is easily resolvable against Petitioner. *See Rudolph*, 208 F.3d 227, at *1.

Petitioner apparently believes that he had a conflict of interest with the Public Defender's Office because the office had funding problems, it fired one of the attorneys working on his case, and it sent his case to a contract attorney. *Doc.* 13 at 2-4. Even assuming that this somehow constitutes ineffective assistance, Fierro again fails to meet his burden.

Under the second prong of the *Strickland* test, prejudice can be presumed for a conflict of interest claim "only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Strickland*, 466 U.S. at 692 (citing *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980)).  Fierro, however, does not show how any of the identified "conflicts" adversely affected his appointed attorneys' conduct, or that any of his attorneys were actively representing interests conflicting with his own interests. A presumption of prejudice therefore does not arise, and Petitioner makes no showing that any of these alleged conflicts affected the outcome of his case. Accordingly, the Court recommends denial of relief on this ground as well.

### 3.  Appellate Counsel

Lastly, Petitioner asserts that his counsel on appeal was ineffective because he failed to raise all issues for appeal. *Doc. 1* at 10. Petitioner presented this argument to the state district court on collateral attack. *Doc. 23-5* at 34-35. The court denied relief, accepting the State's position that Petitioner provided no explanation of how his counsel was ineffective. *Doc. 23-5* at 94; *Doc. 23-5* at 89-90.

This Court agrees that Petitioner fails to show how his appeal counsel fell below an objective standard of reasonableness. While his attorney did present eight issues in the docketing statement (*Doc. 23-3* at 25- 31), but only two in the Brief-in-Chief (*Doc. 23-3* at 61-73), "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones*, 463 U.S. at 751-52. Moreover, Petitioner has also not shown a reasonable probability that he would have been successful on appeal on any issues not raised. Again, the Court recommends denying relief on this ground.

### g.  Witness Intimidation

Petitioner's final asserted ground for relief is an allegation that the trial judge intimidated his brother, Adam Fierro, from testifying about Adam's own relationship with the victim. *Doc. 13* at 6-7. Specifically, he alleges that the judge threatened to bring Adam up on charges if Adam testified that he was actually the father of the victim's child, not Petitioner. *Doc. 13* at 6.

 Petitioner raised a similar argument on collateral attack to the state district court. *Doc. 23-5* at 29-30. The district court denied Petitioner relief on this ground, finding the

State's position to be well-taken and without need for comment. *Doc. 23-5* at 94. The State's position was that "the State did nothing to prevent Petitioner from seeking to compel his brother, Adam Fierro, from testifying on his behalf." *Doc. 23-5* at 88.

As a fundamental element of due process, a defendant has a right to present his own witnesses to establish a defense. *Webb v. Texas*, 409 U.S. 95, 98 (1972) (citing *Washington v. Texas*, 388 U.S. 14, 19 (1967)). However, *Webb* "does not stand for the proposition that merely warning a defendant of the consequences of perjury demands reversal." *United States v. Smith*, 997 F.2d 674, 679-80 (10th Cir. 1993) (citation omitted). Rather, "a court has the discretion to warn a witness about the possibility of incriminating himself," as long as it does not "actively encourage a witness not to testify or [] badger[] a witness to remain silent." *Id.* at 684. The court or the government can violate due process if it substantially interferes with a witness's decision to testify, such as by prosecution, intimidation, or coercive badgering. *United States v. Serrano*, 406 F.3d 1208, 1216 (10th Cir. 2005) (citations omitted).

A review of state court documents reveals the following timeline of events. At a June 26, 2008 hearing, the State's attorney explained that Petitioner recently raised the theory that his younger brother, Adam Fierro, may be the father of victim's child. *Doc. 24-2* at 79-80. The State therefore filed a motion asking for a buccal swab from Adam. *Doc. 24-3* at 10; *see also Doc. 23-3* at 100-01; *Doc. 23-2* at 102-03. The court addressed the issue at a July 1, 2008 hearing, at which Adam Fierro was present. *Doc. 24-3* at 9-10. The State's attorney explained that if Adam was the father of the victim's child, he did not commit statutory rape because he would have been under the age of 18 at the time of conception. *Doc. 24-3* at 12-13. However, the State's attorney

was concerned about whether the victim would allege that Adam forced any such incident. *Doc. 24-3* at 13. The judge therefore appointed another attorney present in the courtroom, Vince Martinez, to discuss the matter with Adam. *Doc. 24-3* at 9. The court took a brief recess, and Mr. Martinez and Adam spoke. *Doc. 24-3* at 15.

Following their conversation, Mr. Martinez informed that court that Adam was refusing to give a buccal swab or make a statement about paternity. *Doc. 24-3* at 17. Subsequently, the State requested that Petitioner be prohibited from calling Adam as a witness. *Doc. 24-3* at 18. The judge granted this request, explaining that,

> [Petitioner] does have a right to put on his defense; however, that right does not trump Adam Fierro's right under the Fifth Amendment. Having raised the Fifth Amendment claim, I'm going to deny the State's motion for a buccal swab. I'm also going to order that [Adam] not be called as a witness in the defense case, because it's totally improper to call a witness for the purpose of having them exercise their Fifth Amendment right in front of a jury . . . . I have recognized [Adam's Fifth Amendment] rights, and because of that I'm not going to allow him to be called as a witness in this case.

*Doc. 24-3* at 20-21. The judge then excused Adam from the courtroom. *Doc. 24-3* at 21. Petitioner's attorney objected to the court's ruling, asserting that the defense should be allowed to call Adam to testify on matters other than paternity. *Doc. 24-3* at 22. The Judge clarified that Petitioner could call Adam for testimony in other areas, but issued a warning regarding any potential testimony on paternity:

> when he is here with his attorney, I'll tell Adam that if he were to somehow slip up, I will put him in jail so fast – where he volunteers anything about sex, his sister, I mean, I will jack him up so quick, I'll make everybody's head spin. So if he's called, then, depending on just exactly what the question is, how it's presented, you'd be surprised, if I jump ugly, how far and fast I do jump. I will not have a witness called in under the guise of talking about one thing, and volunteering information on something else.

*Doc. 24-3* at 27.

It is clear from the record that the trial judge did not intimidate or badger Adam into remaining silent. In fact, neither the judge nor the State's attorney did anything to substantially interfere with Adam's decision to testify. Being concerned about self-incrimination, the court appointed Adam an attorney and then Adam, freely and on advice of his attorney, chose not to submit a buccal swab or testify regarding paternity. The judge then explained that Fierro could call Adam to testify about other matters, but could not be called to testify about paternity because he had invoked his Fifth Amendment right to remain silent. While the judge did give a rather harsh warning as to issues on which Adam could and could not testify, Adam was not actually in the courtroom for that warning. Based on these facts, the state court's decision to deny Petitioner relief on this claim is not contrary to or an objectively unreasonable application of clearly established law. Petitioner has not met his burden to show that there was no reasonable basis for the state court to deny relief. *See Harrington*, 562 U.S. at 98.

### h. Other Motions and Objections

In addition to his claims in the Petition and Amended Petition, Petitioner filed numerous other motions and objections, asking for assorted relief. First, in his Petition, he complains that the New Mexico Supreme Court did not provide a written opinion as to why it denied his Petition for Writ of Certiorari. *Doc. 1* at 12. To the extent this is a request for a written explanation from the New Mexico Supreme Court, the Court has already denied such a request and should deny it again. *See Doc. 6*. As already explained, "[t]his Court has no authority to order the NMSC to elaborate on its written rulings, nor would it be inclined to interfere in such a manner." *Doc. 6* at 1.

Second, Respondents requested, and the Court granted, two extensions of time to file their Answer to the Petition. *Docs. 11, 12, 18, 19*. Petitioner objects to these extensions, arguing first that Respondents did not seek his concurrence, as required by local rule, on either request for extension. *Doc. 21* at 4-5; *Doc. 22* at 5-7. Under Local Rule 7.1(a), however, "[i]n *pro se* inmate cases, movant need not determine whether the motion is opposed." D.N.M.LR-CIV 7.1(a). Next, in Respondents' second extension request, they explained that they needed a further extension because "Counsel currently is in the midst of finalizing a complicated answer to a *pro se* frequent filer's 28 U.S.C. § 2254 petition challenging probation revocations in four separate state-court cases." *Doc. 18* at 1. Petitioner appears to misread this statement, believing that Respondents were labeling him as the referenced frequent flier. He therefore asserts that the facts contained in Respondents' second request for an extension are incorrect and that the order for extension was based on fraudulent facts. *Doc. 21* at 1-3; *Doc. 22* at 2- 5; *Doc. 27* at 1-2. Read correctly, Respondents were actually explaining work required in another case caused them to need an extension of time to answer the Petition in this case. *See Doc. 29* at 1 ("[Respondent's counsel] now clarifies that [Petitioner] is not the petitioner to whom she was referring . . . ."). In any event, because the Court granted Respondents extensions of time to answer (*Docs. 12, 19*) and because Respondents filed an answer (*Doc. 23*), Petitioner's objections should be overruled as moot.

Third, Petitioner filed two Motions for Summary Judgment, arguing that the trial court violated his rights to speedy trial and self-representation. *Doc. 26* at 1-6; *Doc. 28* at 2-4. Because Petitioner raised these issues in his Petitions and because these

motions do not add to or clarify his argument, they should be denied. He also argues, again, that the facts Respondents included in their motion for extension of time are incorrect. *Doc. 26* at 7-8; *Doc. 28* at 2. He again misreads and misunderstands Respondents' motion. The Court therefore recommends denying his Motions for Summary Judgment (*Docs. 26, 28*).

Fourth and finally, Petitioner filed a Motion for Status and Evidentiary Hearing, requesting a hearing on all pending motions and petitions. *Doc. 31*. An evidentiary hearing is warranted when the petitioner shows "he was diligent in developing the factual basis for his claim in state court, and assert[s] a factual basis that, if true, would entitle him to habeas relief." *Sandoval v. Ulibarri*, 548 F.3d 902, 915 (10th Cir. 2008) (citing 20 U.S.C. § 2254(e)(2)) (subsequent citations omitted); *see also Schriro v. Landrigan*, 550 U.S. 465, 474-75 (2007); *Williams*, 529 U.S. at 429-31. Many of Petitioner's claims are disputed questions of law, not fact. On the disputed issues of fact, Petitioner has not shown that he was diligent in developing a factual basis for his claims in state court. The Court can resolve the pending petitions and motions on the record and an evidentiary hearing is not needed. Accordingly, the Court recommends denying the Motion for Status and Evidentiary Hearing (*Doc. 31*).

## VI.    Recommendations

For the reasons set forth above, the Court recommends that the presiding judge:

(1) deny the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus (*Doc. 1*) and the Amendment for Writ of Habeas Corpus and Exhibit's Attachments (*Doc. 13*);

(2) overrule Petitioner's Objections (*Docs. 21, 22*);

(3) deny Petitioner's Motions for Summary Judgment (*Docs. 26, 28*); and

(4) deny Petitioner's Motion for Status and Evidentiary Hearing (*Doc. 31*).


_____

Karen B Molzen

UNITED STATES MAGISTRATE JUDGE


---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**